IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| DAVID WHEELER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 22-cv-1624-RJD |
| ) | |
| DAVID MITCHELL, CHRISTEL CROW, and ) | |
| CHRISTINE BROWN, ) | |
| ) | |
| Defendants. ) | |

**ORDER**

**DALY, Magistrate Judge:**

Plaintiff David Wheeler, an inmate in the custody of the Illinois Department of Corrections ("IDOC"), filed this lawsuit pursuant to 42 U.S.C. § 1983 alleging his constitutional rights were violated while he was incarcerated at Pinckneyville Correctional Center ("Pinckneyville"). Plaintiff is a polio survivor and, as a result of that illness, wears a leg brace. Plaintiff alleges he complained to staff at Pinckneyville in 2021 and 2022 that his leg brace was broken and causing him pain and injury. Plaintiff alleges Wexford approved a new brace in February 2022, but he has not received it. Plaintiff proceeds in this action on an Eighth Amendment claim against Defendants Christel Crow, Christine Brown, and David Mitchell for exhibiting deliberate indifference to Plaintiff's serious medical needs in 2021 and 2022 related to his broken leg brace. Defendant Mitchell, the Pinckneyville Warden, is also named in his official capacity for the purpose of carrying out any injunctive relief.

Shortly after filing his complaint, Plaintiff filed a Motion for Injunctive Relief that is now before the Court (Doc. 10). The Court construes this as a Motion for Preliminary Injunction. A hearing on this motion was held before the undersigned on February 14, 2023. For the reasons

set forth below, Plaintiff's Motion is **DENIED**.

## Factual Background

In his Motion now before the Court, Plaintiff asks the Court to intervene and order that he be issued a new leg brace. Plaintiff asserts he needs his leg brace to "eliminate his pain" and allow him to return to work.

Defendants Brown, Crow, and Mitchell filed their response to Plaintiff's motion on September 1, 2022 (Doc. 24). Defendant Brown is the Healthcare Unit Administrator, Defendant Crow is the Assistant Warden at Pinckneyville, and Defendant Mitchell is the Pinckneyville Warden. Defendants set forth various reasons why a preliminary injunction should not issue. First, Defendants assert Plaintiff's claims are not likely to succeed on the merits because they are not medical providers and they defer to the same to determine what medical treatment is necessary to assist Plaintiff. Defendants also contend Plaintiff is not entitled to dictate what type of medical treatment he receives.

Defendants further assert that in the absence of evidence of an ongoing constitutional violation, a federal court lacks authority to enter any injunctive relief against the state. As such, Defendants contend that because the leg brace is only unavailable to Plaintiff because it is currently being modified to his specifications, the relief he requests is barred by the Eleventh Amendment and Sovereign Immunity.

Finally, Defendants assert granting Plaintiff the relief he seeks is against public policy insofar as the Court should not interfere in the day-to-day operations of IDOC facilities.

Defendant Desai also responded to Plaintiff's motion; however, since her filing she has been dismissed from this case (*see* Doc. 63). Although the Court need not consider Desai's

response, it still references the medical records she attached in support of the same.

Based on the evidence in the record and testimony at the hearing, it appears the parties generally agree on the following facts concerning Plaintiff's leg brace.

On May 5, 2021, Plaintiff's leg brace broke and caused him to fall (Doc. 55-1 at 6). Plaintiff was provided crutches and his leg brace was repaired by Hanger, a specialty company in the business of providing prosthetics and leg braces, and returned to him on September 6, 2021 (*id.* at 6, 19). Plaintiff continued to have issues with his repaired leg brace, and a physical therapy note on December 14, 2021 indicated the same (*id.* at 27-29). An "NP Note" on December 14, 2021 stated that a request for collegial review was submitted for Hanger to evaluate Plaintiff for a properly-fitting leg brace (*id.* at 30). Plaintiff testified his leg brace was fitted at Hanger on February 22, 2022, and he should have received his new brace by mid-March (*see id.* at 37). Plaintiff testified that Hanger sent his new leg brace to Pinckneyville on July 28, 2022. Plaintiff's medical records, however, indicate the leg brace was received from Hanger on June 15, 2022 (*see id.* at 47). Plaintiff's medical record noted his complaints concerning the new brace, including: (1) Velcro straps instead of leather straps; (2) no inner lining; (3) no leg pad; and (4) movable hinged ankle needed to be adjusted (*id.* at 47-48). Plaintiff was going to test the brace out to determine what other adjustments might be needed and would report the same at his follow-up with Hanger the next week (*id.* at 48). A notation in Plaintiff's medical records dated June 22, 2022 indicated Plaintiff went to Hanger on a furlough and Plaintiff reported that Hanger refused to address his concerns about the leg brace (*id.* at 51-52). Plaintiff reported that Hanger kept the new brace and he kept the old brace (*id.* at 52). On July 28, 2022, a nurse's note indicated they were awaiting arrival of the leg brace (*id.* at 59).

On December 6, 2022, the PTA noted she attempted to deliver the new leg brace to Plaintiff from Hanger, but that Plaintiff reported the brace was still inadequate for his needs (Doc. 55-1 at 62). The Director of Nursing (DON) was to contact Hanger to return the brace and report Plaintiff's complaints (*id.*). On January 18, 2023, the DON, Johnny Garza, noted he spoke with "Ed" at Hanger who advised the leg brace is "well-fitting" and should be meeting all of Plaintiff's physical needs (*id.* at 63). DON Garza requested that Ed from Hanger come to Pinckneyville to meet with various staff members and Plaintiff, and Ed was going to speak with his employer who is allowed to visit the correctional facility.

At the hearing on Plaintiff's motion for preliminary injunction, DON Garza testified as to his efforts to contact Hanger regarding Plaintiff's complaints about the new leg brace fitted by Hanger. Garza explained that Ed from Hanger indicated the brace provided to Plaintiff in December 2022 is a functional brace. Garza testified he requested that a representative from Hanger come to Pinckneyville so that Hanger can meet with Plaintiff and other staff members so the disconnect in the opinion of the brace can be fully addressed. Garza explained that since he spoke with Ed from Hanger on January 18, 2023 he has attempted to contact Hanger 2-3 more times, but has been unsuccessful. Garza has not received a call back from Hanger. In the meantime, Garza explained he and other Pinckneyville staff (it is not clear precisely who) have identified four other businesses that provide services similar to Hanger. They were advised that one of these businesses would not service an incarcerated individual, and the other three businesses had not yet returned the call. Garza explained it can sometimes be difficult to find an outside facility willing to provide prosthetics to inmates.

Both Garza and Plaintiff confirmed Plaintiff currently has crutches to assist with

ambulating. Garza indicated there is no maximum duration for an individual to use crutches. Garza and Plaintiff testified that Plaintiff has been offered the use of wheelchair while he awaits a leg brace that meets his specifications; however, Plaintiff indicated he has refused the use of a wheelchair.

## Discussion

A preliminary injunction is an "extraordinary and drastic remedy" for which there must be a "clear showing" that Plaintiff is entitled to relief. *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (quoting 11A CHARLES ALAN WRIGHT, ARTHUR R MILLER, & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE §2948 (5th ed. 1995)). The purpose of such an injunction is "to minimize the hardship to the parties pending the ultimate resolution of the lawsuit." *Faheem-El v. Klincar*, 841 F.2d 712, 717 (7th Cir. 1988). Plaintiff has the burden of demonstrating: (1) a reasonable likelihood of success on the merits; (2) no adequate remedy at law; and (3) irreparable harm absent the injunction. *Planned Parenthood v. Commissioner of Indiana State Dept. Health*, 699 F.3d 962, 972 (7th Cir. 2012). As to the first hurdle, the Court must determine whether "plaintiff has any likelihood of success – in other words, a greater than negligible chance of winning." *AM General Corp. v. DaimlerChrysler Corp.*, 311 F.3d 796, 804 (7th Cir. 2002). If Plaintiff meets his burden, the Court must then weigh "the balance of harm to the parties if the injunction is granted or denied and also evaluate the effect of an injunction on the public interest." *Id.* In addition, the Prison Litigation Reform Act provides that a preliminary injunction must be "narrowly drawn, extend no further than necessary to correct the harm . . . ," and "be the least intrusive means necessary to correct that harm." 18 U.S.C. § 3626(a)(2). Finally, pursuant to Federal Rule of Civil Procedure 65(d)(2), a preliminary injunction would bind only the parties,

their officers or agents, or persons in active concert with the parties or their agents.

Plaintiff seeks a preliminary injunction to obtain a leg brace that meets his specifications. Although the Court is mindful of the issues Plaintiff has met in obtaining his leg brace, the undersigned finds that Plaintiff has failed to meet his threshold burden for a preliminary injunction. First, it is not clear that Plaintiff will suffer imminent, irreparable harm absent injunctive relief. According to Plaintiff's medical records and the testimony provided at the hearing, Plaintiff has been provided with crutches to assist in ambulating while he awaits a leg brace that meets his specifications. Although the Court recognizes Plaintiff's complaints about the discomfort caused by the crutches, it is not at all apparent he will suffer imminent or irreparable injury related to his use of the same. Moreover, Plaintiff has been offered the use of a wheelchair that would alleviate the discomfort associated with his use of crutches, but he has refused a wheelchair.

Further, based on the evidence now before the Court, Plaintiff has not established that he is likely to succeed on the merits of his claim at this time.[1] The underlying case states a claim for deliberate indifference to serious medical needs against Defendants Brown, Crow, and Michell, who are not treating medical providers. To prevail on his claim, Plaintiff must show that his medical condition was "objectively, sufficiently serious" and that the "prison officials acted with a sufficiently culpable state of mind." *Greeno v. Daley*, 414 F.3d 645, 652-53 (7th Cir. 2005) (citations and quotation marks omitted). Also, nonmedical personnel are entitled to defer to the judgment of health professionals so long as they do not ignore the prisoner. *King v. Kramer*, 680 F.3d 1013, 1018 (7th Cir. 2012). In this case, it appears Plaintiff may suffer from a serious medical condition related to his ambulation, as Plaintiff requires regular evaluation by medical

---

[1] Such a conclusion is not a judgment as to whether Plaintiff may ultimately prevail in this lawsuit.

personnel and a medical device to remain mobile. *See Hayes v. Snyder*, 546 F.3d 516, 522-23 (7th Cir. 2008). However, the evidence in this case does not support a finding that Defendants have acted with a sufficiently culpable state of mind—namely, deliberate indifference.

"The infliction of suffering on prisoners can be found to violate the Eighth Amendment only if that infliction is either deliberate, or reckless in the criminal law sense." *Duckworth v. Franzen*, 780 F.2d 645, 652-53 (7th Cir. 1985). Negligence, gross negligence, or even "recklessness," as that term is used in tort cases, is not enough. *Id.* at 653. Put another way, the plaintiff must demonstrate that the official was "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists" and that the official actually drew that inference. *Greeno*, 414 F.3d at 653. "Even if the defendant recognizes the substantial risk, he is free from liability if he 'responded reasonably to the risk, even if the harm ultimately was not averted.'" *Gayton v. McCoy*, 593 F.3d 610, 620 (7th Cir. 2010) (quoting *Farmer*, 511 U.S. at 843).

Further, the Eighth Amendment does not require that prisoners receive "unqualified access to health care." *Hudson v. McMillian*, 503 U.S. 1, 9 (1992); *see also Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997) ("Under the Eighth Amendment, [the plaintiff] is not entitled to demand specific care"). The Seventh Circuit has recognized that "[t]here is not one 'proper' way to practice medicine in prison, but rather a range of acceptable courses based on prevailing standards in the field." *Jackson v. Kotter*, 541 F.3d 688, 697 (7th Cir. 2008). Moreover, the Seventh Circuit recognizes that treatment decisions that necessarily require medical judgment, such as whether one course of treatment is preferable to another, are beyond the Eighth Amendment's purview. *Snipes v. DeTella*, 95 F.3d 586, 591 (7th Cir. 1996) (citation and quotation omitted).

The evidence before the Court establishes that staff at Pinckneyville have made consistent efforts to ensure Plaintiff receives a leg brace that fits his specifications since May 2021. Indeed, since this time, Plaintiff's leg brace has been repaired, a new brace has been prepared and provided to Plaintiff, and modifications to the new brace have been made. Plaintiff is awaiting modifications of the brace by Hanger, which is proving to be a timely effort; however, the evidence in the record demonstrates that much of the delay appears to be on the part of Hanger and Hanger is not under the control of any of the Defendants. There is also no evidence that Defendants were aware of a pattern of delay by Hanger that would be likely to cause constitutional violations, and that Defendants failed to act in response. *See Walker v. Wexford Health Sources, Inc.*, 940 F.3d 954, 967 (7th Cir. 2019). Further, it appears action has been taken by staff at Pinckneyville to attempt to find other avenues in order to provide Plaintiff a leg brace that meets his specifications. Although Plaintiff is understandably frustrated with the issues he has met in obtaining a leg brace, the evidence does not support a finding at this time that Defendants have disregarded a substantial risk to his health. Rather, the evidence tends to support a finding that Defendants have engaged in sufficient efforts to provide Plaintiff with a leg brace that meets his specifications. For these reasons, the Court finds Plaintiff has failed to meet his threshold burden in demonstrating entitlement to a preliminary injunction.

## Conclusion

Based on the foregoing, Plaintiff's Motion for Injunctive Relief (Doc. 10), which the Court construes as a Motion for Preliminary Injunction is **DENIED**.

**IT IS SO ORDERED**.

**DATED: February 15, 2023**

/s/ *Reona J. Daly*
**Hon. Reona J. Daly**
**United States Magistrate Judge**